# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-487-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Debra Wilson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 14, 1958, and was 46 years old at the time of the administrative hearing. She has a GED and previously worked as an administrative technician, switch board operator, and supervisor. The claimant alleges she has been unable to work since May 7, 2002, because of pain in the neck, left shoulder, arms, hands, hips, and feet.

## Procedural History

On April 24, 2003, the claimant protectively filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq*.). The application was denied. After a hearing on September 1, 2004, ALJ Michael Kirkpatrick found that the claimant was not disabled in a decision dated February 3, 2005. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of medium work, *i. e.*, the claimant could lift and/or carry 25 pounds frequently and 50 pounds occasionally and stand, walk and/or sit for six hours in an eight-hour workday (Tr. 18-19).

The ALJ concluded that the claimant could return to her past relevant work as an administrative assistant (Tr. 27).

**Review**

The claimant contends that the ALJ erred: (i) by performing a single analysis of her pain and limitations for the entire time period covered by her claim; (ii) by ignoring or selectively discussing certain medical records from prior to October 2003; and, (iii) by failing to recontact a treating physician and to discuss the report of an examining physician. The Court finds that the ALJ *did* fail to discuss probative evidence as to the severity of the claimant's limitations, and that the case must therefore be reversed.

The record reflects that the claimant received a considerable amount of treatment relative to her impairments prior to her onset of disability in May 2002. Medical records from Dr. W. Emery Reynolds, M.D. indicate that the claimant underwent a cervical fusion in June 1997. Following surgery the claimant still suffered from neck and left arm pain, making it difficult for her to engage in activities. The claimant also had pain in both hands. She was noted to be suffering from post bilateral carpal tunnel releases and two-level anterior cervical discectomy and fusion with significant residual symptomology, but no neurological deficits were indicated. An EMG and nerve conduction study was recommended (Tr. 121-23), which the claimant underwent in March 1998. The study revealed only minor non specific abnormalities in the left bicep and left brachioradialis (Tr. 119-20). The claimant underwent an MRI of the cervical spine in March 1998, and Dr. Reynolds found that further surgery was not necessary. He believed the claimant had cervical spondylosis, which was

primarily responsible for her complaints. He opined she should pursue pain management and that she would not be able to return to her previous job (Tr. 115). He was asked for a permanent partial impairment rating for the claimant at the end of March 1998. Dr. Reynolds concluded the claimant's total permanent partial impairment to the whole man was 35 percent (Tr. 113). Medical records from Dr. David McElroy, D.O. indicate that on three occasions from October through December 1998, the claimant could perform no lifting, could not sit for long periods, and might require time off for chronic pain caused by her cervical herniated disc (Tr. 224, 226, 228). Medical records from Dr. Thomas Salyer, D.O. indicate that he treated the claimant from August 2001 to January 2002, and he determined, *inter alia*, that the claimant had decreased range of motion in her right shoulder and decreased grip strength on the left (Tr. 125).

The ALJ specifically mentioned Dr. Salyer's examination of the claimant in January 2002 and noted that he diagnosed her with cervical radiculopathy. But the ALJ did not mention Dr. Salyer's findings that the claimant had a decrease in the range of motion of her right shoulder and decreased grip strength on the left. The ALJ should have discussed these findings, as he apparently rejected them; the claimant's RFC did not include any limitations regarding her shoulder or hands. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other

parts, is improper."). Further, the ALJ wholly failed to mention any findings made by Dr. Reynolds or Dr. McElroy; although these were made prior to the claimant's onset of disability, the ALJ should have considered them, as they had some bearing on the extent of the claimant's limitations after the alleged onset of disability. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").

Finally, the ALJ seems to have completely ignored a report from Dr. Michael Winzenread, M.D., who examined the claimant and reviewed some of her medical records in January 2005 after the alleged onset of disability. At that time, the claimant complained of pain in her neck radiating to the left shoulder, stiffness and decreased range of motion of the neck, decreased range of motion in both elbows (the left worse than the right), and numbness in both hands from carpal tunnel syndrome. Examination revealed problems in the hands with positive Phalen's sign and negative Tinel's sign. Her cervical flexion, extension, right and left lateral flexion, and right and left rotation were all 20 degrees. Left elbow flexion was limited to 90 degrees with extension at zero degrees. The claimant's left and right wrist flexion and extension was 60 degrees and radial and ulnar flexion was 20 degrees. Dr. Winzenread concluded that the claimant's condition was consistent with 61.57 percent permanent disability and that she was unable to return to employment because of the combination of her injuries and lack of transferrable skills (Tr. 264-66).

Undoubtedly, some of the statements made by these doctors were not entitled to any particular deference by the ALJ because they did not amount to "medical opinions," *e. g.*, conclusions about whether the claimant could work or was disabled. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (stating that opinions that the claimant is "disabled" or "unable to work" are not medical opinions because they "are administrative findings that are dispositive of a case, *i.e.*, that would direct the determination or decision of disability"). But the ALJ was required to at least consider these opinions and not simply ignore them, as he appears to have done here. *See Hamlin*, 365 F.3d at 1215 ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added]. *See also Lackey v. Barnhart*, 127 Fed. Appx. 455, 457-58 (10th Cir. 2005) ("[T]he ALJ must 'evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.'") [unpublished opinion], *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. Further, it is clear that at least some of the statements made by these doctors *were* medical opinions, *e. g.*, no lifting and no sitting for long periods, decreased range of motion in the right shoulder, decreased grip strength on the left, positive Phalen's sign, and decreased range of motion in the cervical spine and elbows. The ALJ should clearly have considered *these* opinions. *See Clifton v.*

*Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

Because the ALJ failed to discuss the probative evidence mentioned above, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If on remand the ALJ determines that such evidence warrants the imposition of additional functional limitations on the claimant's ability to work, he must include them in the RFC and re-determine whether the claimant is disabled.

## Conclusion

For the reasons set forth above, the ruling of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings consistent with this Opinion and Order.

**DATED** this 30th day of March, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**